2021 IL App (1st) 190122-U

SIXTH DIVISION
May 14, 2021

No. 1-19-0122

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 25018 |
| | ) | |
| FRANK WILLIAMS | ) | Honorable |
| | ) | Thomas V. Gainer, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Connors and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1     *Held*: Dismissal of defendant's postconviction petition at the second stage is affirmed; defendant failed to make a substantial showing that counsel representing him on direct appeal was ineffective for failing to argue that his 25-year sentence for the predatory criminal sexual assault of a child was excessive.

¶ 2     Defendant Frank Williams appeals from the circuit court's dismissal of his postconviction petition at the second stage. A jury found Mr. Williams guilty of the predatory criminal sexual assault of a child, for which Mr. Williams was sentenced to 25 years in prison. We affirmed his conviction on direct appeal, rejecting both his claims of trial error and his argument that the trial

court had considered an improper aggravating factor at sentencing. Mr. Williams's *pro se* petition for postconviction relief was advanced to the second stage and supplemented by appointed counsel. Ultimately, however, the circuit court granted the State's motion to dismiss the petition, finding that Mr. Williams had failed to make a substantial showing of a constitutional violation.

¶ 3    On appeal, Mr. Williams challenges the dismissal of his petition only with respect to his claim that his appellate counsel was ineffective for failing to argue that his 25-year sentence was excessive. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                                    I. BACKGROUND

¶ 5                                    A. The Evidence at Trial

¶ 6    The evidence presented at trial, which was summarized in this court's order affirming Mr. Williams's conviction on direct appeal (*People v. Williams*, 388 Ill. App. 3d 1140 (2009) (table) (unpublished order under Supreme Court Rule 23)), was as follows.

¶ 7    On September 16, 2004, Mr. Williams was 27 years old and living with the victim's mother, C.M., with whom he had been in a relationship for almost two years. C.M. testified that she left her apartment for approximately 15 minutes that day and returned to find Mr. Williams engaged in sexual intercourse with S.M., her 12-year-old daughter, who had come to live with them just two months before. The two were both partially unclothed and C.M. saw no sign of a struggle. C.M. testified that she went "crazy," hitting Mr. Williams with her hand and with a chair and causing him to run from the apartment. C.M. left to dial 9-1-1 from a neighbor's telephone. When she returned, she was "angry and mad" and struck S.M. several times with a fly swatter. The police arrived and S.M. was taken to the hospital.

¶ 8    S.M. testified that she had been watching television in her brother's room when Mr. Williams approached the bed she was lying on, removed her shorts, and then removed his own

shorts. As we stated on direct appeal, S.M.'s subsequent testimony "described an act of touching in terms recognizable as an account of sexual intercourse." *Williams*, slip order at 2. S.M. said that Mr. Williams held her hands and wrists during the act and denied hitting him or screaming. The act ended when C.M. entered the room, striking first Mr. Williams and then her daughter.

¶ 9    Officer Achilles Mare, who responded to the 9-1-1 call, described S.M. as hysterical and said she was "crying very loud." At the hospital, it took 45 minutes for S.M. to acknowledge to Dr. Michael Kurz that, in his words, "she was forced to have intercourse with a man." Dr. Kurz described S.M. as "very withdrawn," "very scared," and "tearful," stating that she "would not make eye contact" with him. S.M. told him she had "fought and screamed and scratched" the person who did this to her "but couldn't get away." The doctor examined her and discovered that, in addition to a welt on the inside of her left thigh in the shape of a fly swatter, she had some scrapes on her left forearm and her right ankle that were new and a hymenal tear that was "consistent with [a] sexual assault that had occurred recently." Dr. Kurz said "[i]t was pretty clear in [his] mind what had occurred."

¶ 10    According to the police, Mr. Williams initially denied having intercourse with S.M., but when told that DNA evidence would likely contradict his story, admitted to the act but said that it was the S.M.'s idea. DNA retrieved from S.M.'s underwear revealed identifiable DNA profiles whose characteristics did not exclude Mr. Williams. The State's DNA expert explained that the chance a male of Mr. Williams's ethnicity would *not* be excluded as the source of that DNA was 1 in 11 million.

¶ 11                          B. Verdict and Sentencing

¶ 12    The jury in this case found Mr. Williams guilty of the predatory criminal sexual assault of a child, in that, while 17 years of age or over, he committed an act of sexual penetration with a

victim who was under 13 years of age (720 ILCS 5/12-14.1(a)(1) (West 2004) (since recodified as section 11-1.40 (see Pub. Act 96-1551, art. 2, § 5 (eff. July 1, 2011)))), a Class X felony with a sentencing range of 6-30 years in prison (*id.* at § 12-14.1(b)(1); 730 ILCS 5/5-4.5-25(a) (West 2004)).

¶ 13   At sentencing, the State emphasized the psychological harm that the assault had caused to S.M. and her mother. It also noted Mr. Williams's prior criminal history—three felony convictions, for possessing a controlled substance and a stolen motor vehicle in 1994, and for aggravated battery in 1998, and a misdemeanor domestic battery conviction in 1998.

¶ 14   Defense counsel emphasized that Mr. Williams had been taken out of his home as a child by the Department of Children and Family Services (DCFS) and placed with his grandmother, where he was sexually abused by an aunt. Two years later, he was moved again and sent to live with an uncle until he was 17 years old. Mr. Williams began using marijuana at the age of 8 and consuming alcohol at the age of 15, using both daily by the age of 16. Defense counsel challenged the State's insinuation that, as the victim of child abuse himself, Mr. Williams should have "known better," stating that, "[i]n fact, people who are victimized themselves and who are sexually abused as children often are the ones who commit these crimes." Counsel reminded the court, as detailed in the presentence investigation report, that Mr. Williams had three children of his own (ages 13, 9, and 5), had worked at various jobs and volunteered with his church and other organizations when he was not involved with the criminal justice system, and had most recently earned a number of certificates through a prison Bible correspondence course.

¶ 15   Mr. Williams made a brief statement in allocution, in which he apologized to the court and asked the judge to be lenient so that he could return home to his mother and his children.

¶ 16   The trial court set out the bases for its sentencing decision in significant detail. It began by

describing the assault in this case as "a very severe crime of violence" and noting that "it was extremely difficult and at times impossible for [S.M.] to face her accuser and answer the questions that were posed to her" at trial. The judge, who had also presided over Mr. Williams's aggravated battery case, noted that this was not the first instance in which Mr. Williams had resorted to violence. The judge explained that although the aggravated battery Mr. Williams had previously been convicted of had been "a crime of violence where the defendant was unable to control his demeanor and behavior" and had "inflicted violence on another individual," and although Mr. Williams had been on probation before, he had sentenced Mr. Williams to a year of intense probation in the hopes that Mr. Williams could finally "get his act together and behave in a law abiding fashion." The court agreed with defense counsel that a history of sexual abuse can make a person more prone to becoming a perpetrator of such abuse later in life but viewed this as "an explanation, if anything," and not "an excuse or justification." The court noted that Mr. Williams had not sought treatment to address this concern. Finally, the court considered it an aggravating factor that Mr. Williams had held a position of trust or supervision in relation to his victim.

¶ 17    The court sentenced Mr. Williams to 25 years in prison on the charge of predatory criminal sexual assault of a child, found he had willfully violated his probation on his earlier charge of aggravated battery, and sentenced him to 5 years in prison on that charge, with the sentences to run concurrently.

¶ 18                          C. Subsequent Proceedings

¶ 19    Mr. Williams's counsel filed a lengthy post-trial motion asserting numerous grounds for relief, including insufficient evidence, erroneous evidentiary rulings, and improper comments by the prosecutor during closing argument. Mr. Williams's appellate counsel unsuccessfully pursued a number of these arguments on direct appeal. Appellate counsel also raised a sentencing

challenge, arguing that the trial court had improperly found that Mr. Williams committed his offense while holding a position of trust in relation to the victim, a statutory factor in aggravation (730 ILCS 5/5-5-3.2(a)(14) (West 2004)) that the court applied in arriving at its sentence. We rejected that argument, noting that the factor's application does not depend on the minor victim personally placing trust in the defendant, but instead takes into consideration whether trust in the defendant by the victim's parent or guardian afforded the defendant "access to a minor that would not be granted to a stranger." *Williams*, slip order at 7. The court properly considered this a factor since C.M. had been in a relationship with Mr. Williams for over two years and placed trust in him, even if S.M. had not known Mr. Williams long enough to have done so.

¶ 20    On July 27, 2010, Mr. Williams filed a *pro se* postconviction petition asserting over 100 claims of ineffective assistance of trial and appellate counsel, prosecutorial misconduct, and judicial error, including, on page 16, that his "[a]ppellate counsel was ineffective for failing to raise issues on direct appeal," and on page 41, that the trial court "sentenced [him] excessively." The petition was advanced to the second stage, where postconviction counsel was appointed to assist Mr. Williams. The State filed an initial motion to dismiss the *pro se* petition in 2016. Postconviction counsel then assisted Mr. Williams in supplementing his claims of prosecutorial misconduct, and those claims were the subject of a second motion to dismiss by the State that incorporated its first motion.

¶ 21    Following argument, the circuit court granted the State's motion and dismissed Mr. Williams's petition. The court briefly set out its reasons for dismissing each category of claim raised. It concluded that the judicial errors claimed by Mr. Williams in his initial, *pro se* petition could have been raised on direct appeal but were not and were thus forfeited. Claims that Mr. Williams's trial counsel had provided ineffective assistance were conclusory. Claims of

prosecutorial misconduct that Mr. Williams's postconviction counsel had assisted him in supplementing had been decided by the appellate court on direct appeal and were barred by the doctrine of *res judicata*. Finally, the court concluded that there was "really no showing that appellant [*sic*] counsel was objectively unreasonable in not raising the issues that [Mr. Williams had] argued."

¶ 22    Mr. Williams now appeals the dismissal of his petition only with respect to the claim that his appellate counsel provided ineffective assistance by failing to challenge his 25-year sentence as excessive on direct appeal.

¶ 23                                    II. JURISDICTION

¶ 24    The circuit court dismissed Mr. Williams's supplemented postconviction petition on December 20, 2018, and Mr. Williams filed his notice of appeal that same day. We have jurisdiction over this appeal pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and pursuant to Illinois Supreme Court Rule 651(a) (eff. July 1, 2017), governing appeals from final judgments in postconviction proceedings.

¶ 25                                    III. ANALYSIS

¶ 26    Mr. Williams argues that he made a substantial showing in his postconviction petition that his appellate counsel was ineffective for failing to argue on direct appeal that the 25-year sentence he received for the predatory sexual assault of a child was excessive. He asks us to reverse the dismissal of his postconviction petition and either (1) find that an evidentiary hearing is unnecessary and remand for resentencing or, in the alternative, (2) remand for a third-stage evidentiary hearing.

¶ 27    The Post–Conviction Hearing Act (Act) (725 ILCS 5/122–1 *et seq.* (West 2018)) establishes procedures by which an incarcerated criminal defendant may challenge his conviction

or sentence for violations of a state or federal constitutional right. 725 ILCS 5/122–1(a)(1) (West 2018); *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). A postconviction proceeding is a collateral attack on the trial court proceedings. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010). Its scope is limited to constitutional issues that were not, and could not have been, previously adjudicated. *Whitfield*, 217 Ill. 2d at 183. Issues that were already decided by a reviewing court are barred by the doctrine of *res judicata* and issues that could have been raised on direct appeal but were not are forfeited. *Id.* To obtain postconviction relief, a defendant must establish that he suffered a substantial deprivation of his constitutional rights in the proceedings resulting in the conviction or sentence he seeks to challenge. *People v. Caballero*, 228 Ill. 2d 79, 83 (2008).

¶ 28    Postconviction proceedings occur in three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the first stage, the circuit court determines, without any input from the State, whether the defendant's petition is frivolous or patently without merit. 725 ILCS 5/122–2.1(2) (West 2018); *Gaultney*, 174 Ill. 2d at 418. "To survive dismissal at this stage, a petition need only present the gist of a constitutional claim." *Id.* At the second stage, the circuit court may appoint counsel to represent the defendant and file an amended petition, and the State may either answer or move to dismiss the petition. 725 ILCS 5/122–4, 5 (West 2018); *Gaultney*, 174 Ill. 2d at 418. Only if the petition makes a substantial showing of a constitutional violation—*i.e.*, the allegations are supported by the record or by accompanying affidavits—will the defendant proceed to the third stage, an evidentiary hearing on the merits. 725 ILCS 5/122–6 (West 2018); *People v. Silagy*, 116 Ill. 2d 357, 365 (1987). In determining whether to grant a third-stage hearing, the circuit court takes all well-pleaded facts in the petition and in any accompanying affidavits as true, unless they are positively rebutted by the record (*People v. Evans*, 186 Ill. 2d 83, 89 (1999)) and does not make findings of fact or credibility determinations (*People v. Childress*, 191 Ill. 2d 168, 174 (2000)).

We review the dismissal of a postconviction petition without an evidentiary hearing *de novo* (*People v. Sanders*, 2016 IL 118123, ¶ 31) and may affirm on any basis supported by the record (*People v. Jones*, 399 Ill. App. 3d 341, 359 (2010)).

¶ 29                          A. The State's Forfeiture Argument

¶ 30    The State first contends that Mr. Williams forfeited any claim that his appellate counsel was ineffective for failing to challenge his sentence as excessive by not including such a claim in his postconviction petition. See *People v. Jones*, 213 Ill. 2d 498, 505 (2005) ("a claim not raised in a petition cannot be argued for the first time on appeal"). The State acknowledges that Mr. Williams alleged in his *pro se* petition both that his appellate counsel "was ineffective for failing to raise issues on direct appeal" and that the trial court "sentenced [him] excessively," but insists, based on the organization of the petition, that the two statements cannot be read together as a single, cohesive claim. This is, in our view, an overly strict reading of Mr. Williams's petition. Our task on appeal is to determine "whether the allegations in the petition, [when] *liberally construed in favor of the petitioner* and taken as true, are sufficient to invoke relief under the Act." (Emphasis added.) *Sanders*, 2016 IL 118123, ¶ 31. We agree with Mr. Williams that the failure to "artfully connect" the two statements in his petition is not fatal to his ability to pursue this claim on appeal.

¶ 31    Unlike the examples cited by the State, Mr. Williams's allegations were clear enough to discern the claim he now seeks to pursue on appeal. He alleged that his sentence was excessive. This was an argument that, if viable, should have been brought on direct appeal. And Mr. Williams clearly alleged that his appellate counsel was ineffective "for failing to raise issues on direct appeal." Compare this to the allegations in *Jones*, where the petitioner filled in a preprinted form with the words "effective assistance of counsel" and "Sixth," but failed to give any indication

regarding the nature of his claim, which was that both the trial court and his counsel had given him erroneous advice regarding the steps he needed to take to appeal his guilty plea. *Jones*, 213 Ill. 2d at 502-03. And in *Petrenko*, 237 Ill. 2d at 502-03, the petition mentioned the age of certain unchallenged evidence only as part of the petitioner's argument that it would have failed to establish probable cause to issue a search warrant, not for the very different purpose of showing that the nature of the evidence was wrongfully withheld from the court by the testifying officer. *Id.* We find the claim at issue here to be much more straightforwardly raised by the allegations of Mr. Williams's petition.

¶ 32 Cases in which a petitioner alleged ineffective assistance of trial counsel but made no mention of ineffective assistance by appellate counsel are likewise distinguishable (see *People v. Mars*, 2012 IL App (2d) 110695, ¶ 33; *People v. Williams*, 2015 IL App (1st) 131359, ¶ 22; *People v. Reed*, 2014 IL App (1st) 122610, ¶ 61), as Mr. Williams's petition clearly implicated the performance of both his trial and appellate counsel.

¶ 33 The State has not convinced us that, liberally construed, the allegations in Mr. Williams's petition do not encompass the claim that his appellate counsel was ineffective for failing to challenge his sentence as excessive. Finding no forfeiture, we need not address Mr. Williams's alternative argument that his postconviction counsel should have amended his petition to adequately present this claim.

¶ 34                   B. Ineffective Assistance of Appellate Counsel

¶ 35 Since we reject the State's forfeiture argument, we consider the merits of Mr. Williams's claim that his appellate counsel provided ineffective assistance. Criminal defendants are guaranteed the right to a fair trial, including the right to effective assistance of counsel, by both the federal and Illinois constitutions. U.S. Const., amend. VI, XIV; Ill. Const.1970, art. I, §§ 2, 8.

The test for ineffective assistance of counsel, which was articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984), has two parts. A defendant must demonstrate both that his counsel's representation, evaluated from the counsel's perspective at the time and not with the benefit of hindsight, "fell below an objective standard of reasonableness" and that " 'there is a reasonable probability that, but for [the] counsel's unprofessional errors, the result of the proceeding would have been different.' " *Albanese*, 104 Ill. 2d at 526 (quoting *Strickland*, 466 U.S. at 693). A failure to satisfy either prong will preclude a finding of ineffective assistance. *People v. Cherry*, 2016 IL 118728, ¶ 24. Claims of ineffective assistance of appellate counsel are measured against this same standard. *People v. Caballero*, 126 Ill. 2d 248, 269-70 (1989).

¶ 36     Here, Mr. Williams faults his appellate counsel for failing to challenge his 25-year sentence as excessive and for instead raising the more specific—and ultimately unsuccessful—argument that the trial court considered an improper aggravating factor in arriving at that sentence. The State argues that Mr. Williams has failed to establish either deficient performance by his appellate counsel or any resulting prejudice.

¶ 37     We agree with the State. And we note that the line between deficient performance and resulting prejudice tends to blur in cases such as this one. Whether the omission of a claim on direct appeal was deficient performance on the part of appellate counsel necessarily requires an inquiry into the likely success of the claim if it had been brought. As our supreme court has made clear, "[a]ppellate counsel is not required to argue every conceivable issue on appeal." *People v. Williams*, 209 Ill. 2d 227, 243 (2004). "Rather, counsel must exercise professional judgment to select from the many potential claims of error that might be asserted." *Id.* An inquiry into the competency of counsel does not extend to the exercise of judgment, discretion, or strategy, even

where subsequent counsel or the reviewing court may, in hindsight, have handled the matter differently. *People v. Barfield*, 187 Ill. App. 3d 190, 197 (1989). In sum, "[appellate] counsel's assessment of what to raise and argue will not be questioned unless it can be said that his [or her] judgment in this regard was patently erroneous." (Internal quotation marks omitted.) *People v. Madej*, 177 Ill. 2d 116, 159 (1997). In this case we find that dismissal of Mr. Williams's petition was proper because the arguments he maintains his appellate counsel should have made on direct appeal are not likely to have been successful. Thus, Mr. Williams can show neither deficient performance nor prejudice, both of which would be required for him to succeed on his ineffective assistance claim.

¶ 38    A trial court has broad discretion in imposing an appropriate sentence, and a sentence falling within the statutory range will not be disturbed on review absent an abuse of that discretion. *People v. Jones*, 168 Ill. 2d 367, 373-74 (1995). An abuse of discretion exists where a sentence is at great variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). When balancing the retributive and rehabilitative aspects of a sentence, a court must consider all factors in aggravation and mitigation, including the defendant's age, criminal history, character, education, and environment, as well as the nature and circumstances of the crime and the defendant's actions in the commission of that crime. *People v. Raymond*, 404 Ill. App. 3d 1028, 1069 (2010). Our supreme court has emphasized that a trial judge is better positioned than the appellate court to determine an appropriate sentence based on its familiarity with the defendant and its first-hand consideration of these factors. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000).

¶ 39    As noted above, Mr. Williams was found guilty of a Class X felony, with a sentencing range of 6-30 years in prison. 720 ILCS 5/12-14.1(b)(1) (West 2004); 730 ILCS 5/5-4.5-25(a)

(West 2004). His 25-year sentence fell within this range and accordingly would have been presumed proper on direct appeal. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 12. Mr. Williams has pointed to nothing in the record that so obviously rebuts this presumption that it would make his appellate counsel's failure to raise such a challenge—or the decision to forgo it in favor of a more specific challenge to the sentencing factors the trial court considered—patently erroneous.

¶ 40    Mr. Williams acknowledges that "the crime at issue was extremely serious" and that his criminal record at the time included convictions for possession of a controlled substance, possession of a stolen motor vehicle, domestic battery, and aggravated battery (for which he was on probation at the time of this offense). He points out, however, that he had never previously been incarcerated, this was his first conviction for a sexual crime or a crime against a child, and, in his estimation, "trial counsel presented a great deal of compelling mitigating evidence," including evidence of his "highly traumatic childhood" and rehabilitative potential. Mr. Williams also notes that if S.M. had been "only a few months older," the maximum sentence he could have received would have been 15 years. 720 ILCS 5/12-13(a)(4), (b)(1) (West 2004) (since recodified as section 11-1.20 (see Pub. Act 96-1551, art. 2, § 5 (eff. July 1, 2011))). He insists that, given all of this, "[t]he record suggests no reason not to have presented the claim" that his 25-year sentence was excessive and, "[h]ad the issue been argued on direct appeal, this Court was likely to have reduced [his] sentence as an abuse of discretion."

¶ 41    The State notes that the court considered it a factor in aggravation that Mr. Williams held a position of trust over S.M. when the assault occurred. We determined on direct appeal that this was a proper consideration, based on the fact that S.M.'s mother trusted Mr. Williams to be alone with S.M. And the State points out that, although Mr. Williams had never been sentenced to prison before, prior periods of probation had terminated unsatisfactorily. Notably, the record reflects that

the sentencing judge in this case had firsthand knowledge of Mr. Williams's demeanor and likelihood to reoffend, having presided over the aggravated battery charge stemming from a domestic dispute that Mr. Williams was on intensive probation for when he assaulted S.M. The judge was clearly of the view that the leniency Mr. Williams now argues he should have received had already been shown to him.

¶ 42    Mr. Williams cites *People v. Margentina*, 261 Ill. App. 3d 247, 249-50 (1994), for the proposition that "when the trial court fails to properly consider a defendant's poor social upbringing as a contributing factor in his criminal activity, a sentence reduction is warranted." He implies that the trial court in this case improperly considered the sexual abuse he experienced as a child as an aggravating, rather than a mitigating factor, and that this would have resulted in a reduction in the sentence had the issue been raised on appeal. We disagree. The record reflects that this factor, which was discussed at length at sentencing, was viewed by the court as a possible "explanation" but not as "an excuse or justification" for Mr. Williams's assault of S.M. Mr. Williams's own counsel acknowledged that individuals with a history of sexual abuse may be more likely to perpetrate such abuse as adults. And the trial court noted that there was no indication in the record that Mr. Williams had received counseling or other treatment for his childhood trauma since his involvement with DCFS. We cannot say that on direct appeal this court would have found it to be an abuse of discretion for the trial court to refuse to view this information as purely mitigating.

¶ 43    Nor are we persuaded that this court would have concluded, had the issue been raised on appeal, that the trial court failed to properly credit evidence of Mr. Williams's rehabilitative potential, including his work history, volunteer work, the remorse shown in his statement in allocution, and the certificates he was awarded in a Bible correspondence course. The record

reflects that the trial court took all of this evidence into account. Mr. Williams is understandably dissatisfied with the trial court's decision not to weigh this mitigating factors more highly than the aggravating factors emphasized by the State. But rehabilitative potential "is not accorded more weight than any other factor." *People v. Evans*, 373 Ill. App. 3d 948, 968 (2007). And even if we would have weighed the factors differently ourselves, we would not, on appeal, have been free to substitute our judgment for that of the trial court. *People v. Fern*, 189 Ill. 2d 48, 53 (1999).

¶ 44    In short, the allegations in Mr. Williams's postconviction petition, liberally construed in his favor and considered in light of the full record in this case, do not make a substantial showing that his appellate counsel's failure to challenge his sentence as excessive fell below an objective standard of reasonableness or that such a challenge, if it had been made on direct appeal, would have succeeded. We do not question the professional judgment of appellate counsel to select which issues to pursue on appeal unless that decision was patently erroneous. We are unable to make such a finding here, where Mr. Williams's sentence was within the statutory range and none of the arguments for a reduced sentence that he has presented convince us that the presumption the sentence was proper would likely have been overcome on direct appeal.

¶ 45                                IV. CONCLUSION

¶ 46    We affirm the circuit court's dismissal of Mr. Williams's petition at the second stage. Mr. Williams failed to make a substantial showing that his appellate counsel was ineffective for failing to challenge his 25-year sentence for the predatory criminal sexual assault of a child on direct appeal.

¶ 47    Affirmed.