2023 IL App (1st) 221496

No. 1-22-1496

Opinion filed December 22, 2023

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 10 CR 21516 & 12 CR |
| | ) | 5787 |
| ANTONIO SMITH, a/k/a Antonio Cookbay, | ) | |
| | ) | |
| Defendant-Appellant. | ) | The Honorable |
| | ) | Alfredo Maldonado, |
| | ) | Judge, Presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Oden Johnson and Justice Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1     At the first stage of postconviction proceedings, the circuit court summarily dismissed as frivolous and patently without merit Antonio Smith's petition. On appeal, Smith argues the circuit court's summary dismissal was error because the petition states the gist of a constitutional claim that appellate counsel was ineffective for failing to argue that Smith's concurrent sentence of 50

years was excessive on direct appeal. For the following reasons, we reverse the postconviction court's judgment and remand for second-stage proceedings.

¶ 2                                    I. BACKGROUND

¶ 3        Following a bench trial, Smith was found guilty of three counts of home invasion and one count of aggravated battery of Charles Wilson Jr. in case No. 10-CR-21516. Smith was also found guilty of four counts of aggravated kidnapping, two counts of aggravated domestic battery and one count of aggravated battery with the use of a firearm against Tasha Williams in case No. 12-CR-5787. The trial court sentenced Smith to prison terms of 50 years for home invasion, 45 years for aggravated kidnapping, and 30 years for aggravated battery with a firearm to be served concurrently. This court affirmed Smith's convictions in *People v. Cookbay*, 2020 IL App (1st) 162638-U. [1] On June 8, 2022, Smith filed a *pro se* postconviction petition, and the postconviction court summarily dismissed the petition at the first-stage proceedings. Smith appeals the court's summary dismissal of the petition.

¶ 4                                    A. Sentencing

¶ 5        At the sentencing hearing, the State presented two witnesses in aggravation. Chicago police officer Anthony Brown testified that, on November 26, 2010, Brown took Smith to the hospital. Five other police officers accompanied Brown including Officer Wilson, Officer Tong, and Officer Lewis. Brown was pushing Smith in a wheelchair to an X-ray room when Smith became "very combative." Smith spit in Lewis's face and bit Brown's right index finger. Smith also attempted to bite Tong but was unsuccessful. Brown eventually gained control of Smith, and Smith was criminally charged as a result of the incident.

---

[1] Smith is also known as Antonio Cookbay, Antonio Cookbey, and Montell Woods.

¶ 6    Cook County correctional investigator Brendon Lombardi testified that he was reviewing mail being sent in and out of his division when he encountered mail addressed to Preston Johnson from an inmate named Montell Woods on August 13, 2014. Lombardi testified that Smith was in custody under the name Montell Woods at that time. Lombardi read the letter[2] in court:

"It starts off, Dez, 8-1014. What's good big brother, I hear yourself back down like mackdown (phonetic). And that's a good thing because you need your little bro, me, out there with you. Like they say, two eyes better than one. I miss you, brother Dez. I think about my homie all the time. I hope you do, too. I should start trial 9/22/14, and time is good. I need you to demo with what we talked about in Division 1. They stay 5524 South Wolcott Street, one floor. Go by the names Red and Nate. They brothers. Sister's name Tasha. Whole names Red a/k/a Charles Wilson, sister Tasha Wilson, Nate a/k/a Nathaniel Roberts.

Borther Dez, please get with them so I can be side by side with my homie. Okay? You know I ain't got nobody out there but you, Dez. Don't let me down. I hope you like life out there and watch out for them ones who like you the whole nine. I'm about to go. I love you. Pray to Allah. I hear soon from you. Always love you, big bro. Your little bro, Crayhead (phonetic). Soon."

Upon further investigation, Lombardi discovered Johnson and Woods were housed in the same division around 2011.

¶ 7    During argument, the State asserted that the offenses committed by Smith were "egregious" in nature. The State detailed how Smith kidnapped Tasha, made her strip naked, branded her body

---

[2]A physical copy of the letter does not appear in the record on appeal.

with a burned hanger, poured bleach on her, and beat her. After Tasha escaped, Smith went to her family's house where he "continu[ed] his reign of terror against this family and shot the brother in the stomach and, at some point, kidnapped the other brother." The State contended Smith had not changed his ways after his arrest and continued to do things like biting and spitting at police officers and asking someone to "demo or contact" the witnesses to the offenses. The State noted defendant's criminal background, including his convictions for possession of cannabis, felony resisting and obstructing an officer, domestic battery, resisting and obstructing an officer, felony manufacturing and delivering of cannabis, possession of a stolen motor vehicle, and possession of a controlled substance with intent to deliver.

¶ 8    Defense counsel argued that Smith had a difficult upbringing. He stayed in the care of the Department of Children and Family Services until he was five or seven years old. He did not have a relationship with his mother and did not come into the care of his father until he was seven years old. Smith only completed the eighth grade and was in a special education program. He started drinking and smoking marijuana at 13 years old. Counsel explained that Smith hung out with people affiliated with gang organizations, was shot when he was in his twenties, and "suffered from the consequences of the streets." Counsel also stated that Smith had a lack of violence in his background. Aside from the hospital incident and the letter to Johnson, Smith did not have "any notable violent behavior or behavior that is unusual" since his incarceration during the last five years. Smith had also been respectful in court.

¶ 9    Smith submitted a letter to the court. The letter stated as follows:

"Dear Judge,

I[']m writing you this letter because I want a[n] understanding with you your honor. I[']m not saying myself not guilty or guilty. I[']m just asking please can I have a fair trial in your court room Judge Goebel! I know you been [hearing] about how I been acting in other court rooms. It[']s just I be going through a lot in the jails over here with these officers and inmates here. And I never been lockup for non[e] like this before and it take a toll on me your honor. I[']m a good person sir just did wrong with my life. I know *** when we first [met] each other it was a [rough] ride—cause I went *pro-se*, but all along your honor you was helping me out cause I didn't know non[e] about the law like the courts. You had to make it hard for me to show I was making the wrong choices in life! Now I see and I see yourself a good judge—and not working with the State an[d] yourself about the law Judge Goebel. I never been to trial and I pray everything go all is well. A lot of guys who had you say you a fair judge and go by the law, your honor I don't know what's about to happ[e]n at trial all I[']m asking is you please let me see my youth again. Why I say that is because since b[een] here 5 years I see a lot of people find guilty and get a lot of time, not saying me cause God is good and work threw a lot of people in this world. And give people other change in life ask I see you your honor I know you a man of God. I[']m about to go take care [Judge] Goebel and I hope you doing good in life God bless."

¶ 10    The sentencing court stated that it read the letter. The sentencing court noted Smith was loud in the lockup area prior to defense counsel's involvement in the case, but it would not consider it during sentencing. The sentencing court also noted Smith had been "respectful and polite" in the courtroom and it was not considering Smith's conduct while Smith was *pro se*.

¶ 11    During its determination, the sentencing court stated that it considered all the factors in aggravation and mitigation and relied on the presentence report, sentencing witnesses' testimony, the parties' arguments, and Smith's letter. The sentencing court found Smith did not have a "really good childhood" and "got caught up with the wrong crowd." However, the sentencing court found the facts of the case important in his determination. The sentencing court mentioned Tasha "was super scared of what she went through and of what [Smith] put her through." Smith "did go looking for her and entered into the house without permission and pointed a gun at the victim's head in the house and pulled the trigger." The sentencing court also found Smith had a "significant background." In all, the sentencing court concluded, "I do believe, [Smith], that you do not have much rehabilitative potential. And I'm going to tell you that honestly. And I do agree with the State that you're dangerous."

¶ 12    The court sentenced Smith to 50 years' imprisonment—30 years plus a 20-year sentencing enhancement—on the home invasion conviction, 45 years' imprisonment—30 years plus a 15-year sentencing enhancement—on the aggravating kidnapping conviction, and 30 years' imprisonment on the aggravated battery conviction to be served concurrently. All remaining counts merged with the home invasion and aggravated kidnapping convictions. Smith filed a motion to reconsider sentence, which the court denied.

¶ 13                                  B. Direct Appeal

¶ 14    Smith appealed, arguing (1) the evidence was insufficient to convict him of home invasion, aggravated battery, and aggravated kidnapping and (2) his convictions for home invasion and aggravated battery violated the one-act, one-crime doctrine. This court affirmed Smith's convictions and sentence. *Cookbay*, 2020 IL App (1st) 162638-U.

¶ 15                           C. Postconviction Proceedings

¶ 16    On June 8, 2022, Smith filed a *pro se* postconviction petition, an amended petition, and a document detailing additional claims attached to his motion to proceed *in forma pauperis* and to appoint counsel. In these documents, Smith alleged several claims including that his "125 year *de facto* life sentence" was excessive and that appellate counsel was ineffective for failing to "raise a patently meritorious issue on appeal." On August 25, 2022, the postconviction court summarily dismissed the petition. The postconviction court found Smith was mistaken in his claim that he was sentenced to 125 years because his sentence was concurrent, not consecutive. Even considering Smith's concurrent prison term of 50 years, the postconviction court found Smith sentence was within the statutory range and not excessive. Regarding Smith's claim of ineffective assistance, the postconviction court never addressed whether appellate counsel was ineffective for failing to raise a claim of excessive sentence on direct appeal. Rather, the postconviction court addressed whether appellate counsel was ineffective for failing to raise a claim that Tasha was coerced into testifying against Smith when she was pulled over by police in 2012. The postconviction court held the claim was frivolous and patently without merit because there was no evidence to support the claim. Smith now appeals the postconviction court's summary dismissal of the petition.

¶ 17                                  II. JURISDICTION

¶ 18    On August 25, 2022, the postconviction court summarily dismissed Smith's petition at first-stage proceedings. Smith filed a notice of appeal on September 26, 2022. Smith's notice of appeal is timely where the thirtieth day after the judgment fell on a Saturday and the notice of appeal was due the following Monday, September 26. See 5 ILCS 70/1.11 (West 2022) ("The time

within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday or is a holiday as defined or fixed in any statute now or hereafter in force in this State, and then it shall also be excluded."). Therefore, we have jurisdiction over this appeal pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 651(a) (eff. July 1, 2017).

¶ 19                                     III. ANALYSIS

¶ 20     On appeal, Smith argues that the postconviction court erred in summarily dismissing his petition as it states the gist of a constitutional claim of ineffective assistance of appellate counsel for failing to argue that his sentence was excessive on direct appeal. The State contends that the claim is waived because Smith did not allege it in his petition. The State further asserts Smith failed to state the gist of a constitutional claim where the sentencing court imposed an appropriate sentence in light of the evidence and a claim of excessive sentence would not be meritorious on appeal.

¶ 21                                      A. Waiver

¶ 22     We first address the State's waiver argument. The State argues that, even construing the pleadings liberally, Smith waived his claim of ineffective assistance of appellate counsel. The State contends Smith only alleged a claim of excessive sentence in his postconviction petition and never referenced appellate counsel's failure to raise the claim. The State also contends that, while Smith did raise a claim ineffective assistance of appellate counsel in another document filed with the original and amended postconviction petitions, the claim was vague and did not specify any underlying facts as to appellate counsel's ineffectiveness. The State alleges because Smith's claims

of excessive sentence and ineffective assistance of appellate counsel are distinct and raised in separate filings, Smith impermissibly raises a new claim on appeal.

¶ 23    As it pertains to postconviction claims, "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petitions is waived." 725 ILCS 5/122-3 (West 2022). A defendant may not raise claims for the first time on appeal from the trial court's dismissal of his postconviction petition. *People v. Cathey*, 2012 IL 111746, ¶ 21.

¶ 24    In this case, Smith filed an "opening to petition," an "amended petition for post-conviction relief," and a "motion to proceed *in forma pauperis* and to appoint counsel" on the same day. The initial petition makes no reference to excessive sentencing or ineffective assistance of appellate counsel. In the amended petition, Smith alleged that his "125 year *de facto* life sentence is excessive" but made no mention of appellate counsel's ineffectiveness. The motion to proceed was accompanied by a five-page document stating "new claims attached" to the petition. On the second page of the document under a heading titled "Claim II: Mr. Smith Constitutional Rights to Due Process Rights a Fair Trial Were Violated During Sentencing," Smith states the following:

"[5]. Mr. Smith was denied his due process rights under the 6th an[d] 14th Amendment[s] of the U.S. Constitution and Art. 1, Sec. 2 of the Illinois Constitution.

[6]. The due process clause demand[s] a great deal of procedural protection when a defendant's liberty is at stake. The U[.S.] Supreme Court has characterized a citizen's liberty interest as 'an interest of transcending value.' [Citation.] Due process 'embodies the notion of fundamental procedural fairness.' [Citation.]

7. Mr. Smith trial lacked the fundamental fairness impli[ed] in constitutional guarantees of due process of law. Thu[s] entitling him to a new trial or new sentencing hearin[g].

8. It is of no consequence that the falsehood bore upon the witness' credibility rather then directly upon defendant's guilt. A lie is a lie. No matter what it's subject ([citation]).

9. In addition, during sentencing, prosecutors used inflammatory and erroneous statements in closing arguments designed to arouse the prejudices and passions of the court. Prejudicing defendant's right [to] a fair trial. Mr. Smith is entitled to a new sentencing hearing with an accurate record. [Citation.]

[10.] Mr. Smith['s] attorney presented [a] defense—that [Mr.] Smith['s] step mother[,] sister[,] and kids were there [in] the house when Tasha say these brutal acts were occurred. Evidence presented at this trial include[e] only the nurse who treated Tasha at the hospital. Ho[w]ever, the mother, sister, and her 7 an[d] 8 year old daughter[rs] were not called to testify. My attorney was ineffecti[ve] because she lacked a lot of evidence at trial what could of helped [our] defense. Like making sure witness[es] Tasha['s] mom [and] Charles Wilson Sr. were here to take the stand to testify.

[11.] Ineffective assistance of counsel exists where counsel performance fell below an objective stand[ard] of reasonableness and there is a reasonable probability that the result of the proceeding would have been different if counsel would of [raised] these issues. [Citations.] A reasonable probability is a probability suffic[e] [to] undermine confidence in the outcome. [Citation.]

[12.] An attorney may be deemed ineffective for failing [to] call witness to support an otherwise uncorroborated defense theory. *** [Citation.]

[13]. My appellate lawyer is ineffective because he fa[iled] to raise a patently meritorious issue on appeal. [Citations.] Furthermore, an appellate attorney's failure to raise [an] issue on appeal is "patently unreasonable" under Strickl[and] and Evitts, supra, where there is 'no downside' [ ] to rais[ing] the issue on appeal. [Citation].

[14.] Had appellate counsel raised these issues in petitioner's direct appeal it is probable that the appellate court would have found such a structural error and reversed petitioner's conviction.

[15.] Evidence of past witness coercion by the same office that pulled Tasha over in 2012 involved here may well have made a difference in the outcome of this case. Particularly where there is no evidence other th[en] the recanting witnesses' inconsistent statements tying (the defendant) to the shooting. [Citation.]

(Conclusion)

Wherefore, petitioner Antonio Smith Respectfu[lly] requests that this honorable court grant him rel[ief] in the form of a ruling in his favor on the pleadi[ng] or in the alternative that petitioner be given a [new] trial following a hearing."

¶ 25    The amended petition reveals Smith raised a comprehensible claim of excessive sentence. However, given the various divergent legal and factual allegations in claim II in the additional document, the claim of ineffective assistance of appellate counsel is presented in an incoherent manner. The "issues" that appellate counsel allegedly failed to raise are not explicitly stated in the allegations concerning ineffective assistance. The other assertions surrounding the allegations of

appellate counsel's ineffectiveness are also unhelpful in our assessment. In the heading, Smith states that his due process rights were violated during sentencing. However, he only raises one allegation pertaining to the prosecutor's closing remarks during sentencing and raises several alleged trial errors in the remaining allegations.

¶ 26    In the face of this conundrum, we are guided by our established precedent that petitions filed *pro se* must "be given a liberal construction" and are to be viewed " 'with a lenient eye, allowing borderline cases to proceed.' " *People v. Hodges*, 234 Ill. 2d 1, 21 (2009) (quoting *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983)). To survive summary dismissal, a *pro se* postconviction petitioner is not required to allege facts supporting all elements of a constitutional claim. *People v. Brown*, 236 Ill. 2d 175, 188 (2010). "While in a given case the *pro se* defendant may be aware of all the facts pertaining to his claim, he will, in all likelihood, be unaware of the precise legal basis for his claim or all the legal elements of that claim." *People v. Edwards*, 197 Ill. 2d 239, 245 (2001). As such, a *pro se* defendant is required to present only the gist of a constitutional claim, which is "something less than a completely pled or fully stated claim." *Id.*

¶ 27    The State cites several cases to support its argument that the "general and vague claim of ineffective assistance of appellate counsel" is separate and distinct from the claim of excessive sentence. In these cases, this court found a petitioner waived a postconviction claim on appeal when the defendant completely omitted either a claim of ineffective assistance of counsel or the nature of the issue underlying the ineffective assistance claim in his or her postconviction petition. See *People v. Shief*, 2016 IL App (1st) 141022, ¶ 50-53 (finding waiver where the petition did not alleged the issue underlying the ineffective assistance of appellate counsel claim); *People v. Williams*, 2015 IL App (1st) 131359, ¶ 22 (finding waiver where petition did not mention

ineffective assistance of appellate counsel); *People v. Reed*, 2014 IL App (1st) 122610, ¶¶ 59-63 (finding waiver where the petition did not alleged issues underlying the ineffective assistance of appellate counsel claim); *People v. Mars*, 2012 IL App (2d) 110695, ¶ 33 (same); *People v. Cole*, 2012 IL App (1st) 102499, ¶ 16 (finding waiver where petition made no mention of appellate counsel's ineffectiveness). However, unlike the petitions reviewed in these cases, Smith's petition alleges both appellate counsel's ineffectiveness for not raising a meritorious issue on direct appeal, albeit broadly, and the underlying issue—excessive sentence. Therefore, these cases are distinguishable from this case.

¶ 28    In a case more factually analogous, this court held that the petitioner did not waive his postconviction claim on appeal although his claims of excessive sentence and ineffective assistance of appellate counsel were incohesive. See *People v. Williams*, 2021 IL App (1st) 190122-U. There, the petitioner argued on appeal that appellate counsel was ineffective for failing to challenge his sentence as excessive. *Id.* ¶ 30. The postconviction petition alleged, in a disjointed fashion, that appellate counsel " 'was ineffective for failing to raise issues on direct appeal' " and that the trial court " 'sentenced [him] excessively.' " *Id.* The court held that, in construing the petition liberally, the petitioner's "failure to 'artfully connect' the two statements in his petition is not fatal to his ability to pursue the claim at issue on appeal. *Id.*

¶ 29    We find compelling the court's rationale in *Williams*. Here, the record shows Smith argued his sentence was excessive in his amended petition and argued, albeit broadly, appellate counsel was ineffective for failing to raise a patently meritorious issue on direct appeal in the document attached to the motion to proceed, which Smith filed on the same day as the original and amended petitions and the court considered along with the petitions at the first-stage proceedings. Viewing

the petition liberally, we find Smith sufficiently brought a postconviction claim of ineffective assistance of appellate counsel for failing to raise a claim that his sentence was excessive on direct appeal. Accordingly, we hold that Smith did not waive his postconviction claim in this appeal.

¶ 30                                    B. Post-Conviction Hearing Act

¶ 31    Finding no waiver, we now turn to the merits of the claim on appeal. Smith argues the trial court erred in summarily dismissing his postconviction petition at the first-stage proceedings. Smith posits that the petition states the gist of a constitutional claim that appellate counsel rendered ineffective assistance by failing to raise an excessive sentence claim on direct appeal. Specifically, Smith claims that the petition alleged the record does not support the trial court's imposition of a "*de facto* life sentence" of 50 years' imprisonment and that this court would have granted sentencing relief on direct appeal. The State contends the trial court imposed an appropriate sentence based on the evidence and Smith impermissibly requests this court reweigh the sentencing factors. As such, the State asserts no meritorious claim of excessive sentence existed and, therefore, the petition failed to state the gist of a constitutional claim of ineffective assistance of appellate counsel.

¶ 32    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a mechanism by which a criminal defendant can assert that his conviction and sentence were the result of a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. The Act provides a three-stage process for adjudicating postconviction petitions. *People v. English*, 2013 IL 112890, ¶ 23. At the first stage, a trial court considers whether the postconviction petition is frivolous or patently without merit. *Brown*, 236 Ill. 2d at 184. The trial court reviews the petition on its own, without input from the parties. *Id.* The court may review

the court file, the transcripts, and any appellate court actions. *Id.* The court treats the allegations of fact as true so long as those allegations are not positively rebutted by the record. *Id.* at 189.

¶ 33    Any petition deemed frivolous or patently without merit must be dismissed. 725 ILCS 5/122-2.1(a)(2) (West 2022). A petition is frivolous or patently without merit where it has no "arguable basis either in law or in fact" in that it is "based on an indisputably meritless legal theory" or fanciful factual allegations. *Hodges*, 234 Ill. 2d at 16. "An indisputably meritless legal theory is one which is completely contradicted by the record." *Id.* "Fanciful factual allegations include those which are fantastic or delusional." *Id.* at 17.

¶ 34    A *pro se* petitioner is not required to allege facts supporting all elements of a constitutional claim. *Mars*, 2012 IL App (2d) 110695, ¶ 32. Because a *pro se* petitioner will likely be unaware of the precise legal basis for his claim, the threshold for survival is low, and a *pro se* petitioner need allege only enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Hodges*, 234 Ill. 2d at 9. However, the petition must " 'clearly set forth the respects in which the petitioner's constitutional rights were violated.' " *Id.* (quoting 725 ILCS 5/122-2 (West 2006)). We review *de novo* the dismissal of a postconviction petition at the first stage. *Id.*

¶ 35    Smith's ineffective assistance of appellate counsel claim is evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984). Under *Strickland*, defense counsel was ineffective if (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's error prejudiced the defendant. *Strickland*, 466 U.S. at 687. "We assess counsel's performance using an objective standard of competence under prevailing professional norms." *People v.*

*Ramsey*, 239 Ill. 2d 342, 433 (2010). We assess prejudice by determining whether "counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." *People v. Evans*, 209 Ill. 2d 194, 220 (2004). In the context of a first-stage postconviction claim, a defendant need show only that he can arguably meet those two standards, *i.e.*, it is arguable that his counsel was deficient and it is arguable that the outcome of his case would have been different absent the deficient representation. *Hodges*, 234 Ill. 2d at 17.

¶ 36    In a document titled "new claims" attached to the motion to proceed, Smith alleged that his "appellate lawyer is ineffective because he fa[iled] to raise a paten[t]ly meritorious issue on appeal." He alleged, pursuant to the Illinois constitution, "[all] penalties are to be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Citing case law, Smith further alleged "a reviewing court may disturb a sentence within statutory limits if the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense."

¶ 37    In the petition and attached documents, Smith raised the following allegations. Smith claimed the trial court abused its discretion in imposing the sentence because the sentence was "unusually harsh, [is] at the higher end of the sentencing spectrum for those offenses, and that the punishment does not fit the crime." The sentence is "equivalent to a life sentence" because he "will be 71 years old when he is released" and the life expectancy of a prisoner is 65 years of age. The trial court imposed the "most stringent" sentence when "only one physical act of home invasion occurred in this case." Furthermore, the court imposed the sentences "without regard for a particular defendant's rehabilitative potential." Specifically, "despite having a checkered past, prior to this case, petitioner held a job at a telephone communications company for 'Boost Mobile,'

and was employed at 9 different 'Foot Locker' shoe stores." Smith also "assisted the elderly people by cleaning up around their houses and going to the store for them" and "counseled at risk youth in his neighborhood." Smith "helped to raise his nieces" and "dedicated a significant amount of time to providing home care to his father." Considering these factors, the trial court abused its discretion by "not applying the above named principles and consider petitioner's rehabilitative potential, and impose his sentence with the objective of restoring him to useful citizenship."

¶ 38   In view of these allegations, it is arguable that counsel rendered deficient performance. Smith alleged that appellate counsel failed to raise a meritorious claim of excessive sentence. Smith further alleged his sentence was excessive because the constitution mandates that a sentence must be determined in light of the offender's rehabilitative potential and the court's imposition of the maximum sentence[3] was at variance with the mitigating evidence. It is also arguable that Smith was prejudiced by counsel's failure to raise the claim where this court may have reversed or modified his sentence based on an assessment of the law and mitigating evidence. Therefore, we find the petition states the gist of a constitutional claim necessary to advance to the second stage of postconviction proceedings.

¶ 39                                    IV. CONCLUSION

¶ 40   We find Smith's postconviction petition states the gist of a constitutional claim that appellate counsel was ineffective for failing to argue on appeal that Smith's concurrent sentence of 50 years was excessive. Thus, we hold the postconviction court erred in summarily dismissing

---

[3]Smith was convicted of the offenses of home invasion, aggravated kidnapping, aggravated battery with a firearm, all of which are classified as Class X felonies. A Class X felony carries a sentencing range of 6 to 30 years' imprisonment. 730 ILCS 5/5-4.5-25(a) (West 2016). Smith was sentenced to the maximum prison term of 30 years plus a 20-year sentencing enhancement for home invasion, totaling 50 years; 30 years plus a 15-year sentencing enhancement for aggravated kidnapping, totaling 45 years; and 30 years for aggravated battery with a firearm.

the petition at the first stage of postconviction proceedings. Accordingly, we reverse the postconviction court's judgment and remand for second stage postconviction proceedings.

¶ 41      Reversed and remanded.

*People v. Smith*, 2023 IL App (1st) 221496

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 10-CR-21516 & 12-CR-5787; the Hon. Alfredo Maldonado, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Gilbert C. Lenz, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Brian A. Levitsky, and Lisanne P. Pugliese, Assistant State's Attorneys, of counsel), for the People. |