2025 IL App (2d) 240165-U
No. 2-24-0165
Order filed February 3, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-383 |
| ANGELA VARRIALE-YELM, | ) ) ) | Honorable Robert P. Pilmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court erred when it summarily dismissed defendant's postconviction petition at the first stage.

¶ 2    Following a jury trial in the circuit court of Kendall County, defendant, Angela Varriale-Yelm, was convicted of two counts of home invasion, one count of armed violence, and one count of aggravated domestic battery. The trial court merged the two home-invasion counts and sentenced defendant to 20 years' imprisonment for home invasion, 18 years' imprisonment for armed violence, and 5 years' imprisonment for aggravated domestic battery. The trial court determined that defendant inflicted "severe bodily injury" and that her conduct resulted in "great

bodily harm to a victim." Based on these findings, the court determined that defendant's sentences were required to run consecutively (see 730 ILCS 5/5-8-4(d)(1) (West 2016)) and that defendant would be required to serve at least 85% of her sentence pursuant to the truth-in-sentencing law (see 730 ILCS 5/3-6-3(a)(2)(iii), (vii) (West 2016)). On direct appeal, defendant challenged the trial court's imposition of consecutive sentences and its finding that she must serve 85% of her sentence. Defendant also argued that the trial court erred at sentencing because it refused to give weight to the applicable statutory factors in mitigation and that the sentences imposed were excessive. This court rejected defendant's arguments and affirmed. *People v. Varriale-Yelm*, 2023 IL App (2d) 210095-U.

¶ 3     Defendant subsequently filed a *pro se* petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2022)). In her petition, defendant raised various issues, most of which related to the sentence she received. In an order dated January 16, 2024, the trial court dismissed defendant's postconviction petition. In this appeal, defendant argues that her petition for postconviction relief presented the gist of a claim that trial counsel was ineffective for failing to adequately investigate and present evidence of her mental health at sentencing. Defendant further claims that the petition raised an arguable claim that the trial court erroneously imposed consecutive sentences such that her sentence violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) as applied to her. We reverse and remand for further proceedings on defendant's postconviction petition.

¶ 4                              I. BACKGROUND

¶ 5     The proceedings in the underlying trial are recounted at great length in our decision on defendant's direct appeal. See *Varriale-Yelm*, 2023 IL App (2d) 210095-U. Accordingly, we only

summarize the facts occurring prior to the filing of the petition for postconviction relief as necessary for an understanding of the issues raised in this appeal.

¶ 6 Defendant's convictions stem from an encounter involving her, Jesee Janes, Ashley Kelly, and Brittany Vizzini on November 27, 2017. On December 19, 2017, a grand jury returned an 11-count indictment against defendant. Counts I through IV of the indictment charged defendant with home invasion (720 ILCS 5/19-6(a)(1), (a)(2) (West 2016)), a Class X felony. Count V charged defendant with aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2016)), a Class 2 felony. Count VI charged defendant with aggravated battery (720 ILCS 5/12-3.05(a)(1) (West 2016)), a Class 3 felony. Count VII charged defendant with criminal trespass to a residence (720 ILCS 5/19-4(a)(2) (West 2016)), a Class 4 felony. Counts VIII and IX charged defendant with armed violence with a Category II weapon (720 ILCS 5/33A-2(a), 33A-3(a-5) (West 2016)), a Class X felony. Counts X and XI charged defendant with attempt (first-degree murder) (720 ILCS 5/8-4(a), 9-1 (West 2016)), a Class X felony.

¶ 7 Prior to trial, the court informed defendant about the class of each offense and the applicable sentencing ranges. In addition, the court admonished defendant that if she were found guilty of count III or IV (home invasion) and the court found the infliction of "great bodily injury," she would be subject to truth-in-sentencing and would have to serve 85 percent of any sentence imposed on those charges. In pertinent part, the court further admonished defendant that: (1) truth-in-sentencing rules would apply if she were found guilty of count V (aggravated domestic battery); (2) truth-in-sentencing rules would apply if she were found guilty of count VIII or IX (armed violence with a Category II weapon) and the court found the infliction of "great bodily injury"; and (3) mandatory consecutive sentences would be imposed if the court made a finding that "severe bodily injury resulted from [her] actions on any of those Class X Felonies on which [she] were

found guilty." In response to the trial court's inquiries, defendant indicated that she understood the sentencing parameters. Also prior to trial, the court granted the State's motion to *nolle pros* counts I and II (home invasion), count VI (aggravated battery), and count VII (criminal trespass to a residence). On November 16, 2020, the matter proceeded to a jury trial on the remaining charges.

¶ 8     At defendant's trial, Kendall County Sheriff's Deputy John Cady testified that he was dispatched to Unit 108 at 2700 Light Road in Oswego at around 3:44 a.m. on November 27, 2017. Upon his arrival, Cady observed two females (Kelly and Vizzini) and a dog on a sidewalk adjacent to Unit 108. The females pointed to a male (Janes) and a female (later identified as defendant) on the ground directly in front of the door to Unit 108. Janes was on top of defendant. Defendant had a knife in her right hand and was yelling. Cady instructed defendant to drop the knife, and when she did not, Cady stepped on the back of her hand at the wrist until defendant complied. Cady kicked the knife out of reach and instructed Janes to stand up and remain in sight. Cady also instructed defendant to stand up and escorted her to the parking lot to await an ambulance as she had a facial laceration, some facial swelling, and blood running down her face.

¶ 9     Vizzini, Kelly, and Janes each testified that they were awakened by defendant screaming and banging outside Kelly's condominium. Kelly and Janes testified that defendant came in through the window of the bedroom where the couple had been sleeping. Defendant was dressed in a Wonder Woman costume. Initially upon entering the bedroom, defendant was swinging a metal pole and yelling. Kelly testified that defendant struck her at least twice with the pole. Kelly wrestled the pole away from defendant and threw it out the window. At that point, defendant pulled out a box cutter and began swinging it around. Upon seeing the box cutter, Janes instructed Kelly and Vizzini to leave the condominium and call the police. Janes then began struggling with defendant in the bedroom and through the living room. Janes eventually subdued defendant and

pinned her to the ground just outside the front door of the condominium. Janes testified that during the struggle, every time he would make a move for the box cutter, he would get stabbed or slashed. After the police arrived, Kelly noted that Janes had been sliced down his chest and on his arms. Janes subsequently went to the hospital and received stitches for his wounds. Kelly sustained injuries from the metal pole as well as cuts to a finger and the rib area from the box cutter, but did not seek medical care.

¶ 10    Following deliberations, the jury found defendant guilty of two counts of home invasion (count III (injury to Kelly) and count IV (injury to Janes)), one count of aggravated domestic battery (count V), and one count of armed violence (count IX (predicated on entering with intent to commit aggravated battery against Janes)). The jury found defendant not guilty of one count of armed violence (count VIII (predicated on entering with intent to commit aggravated battery against Kelly)) and both attempted murder counts (counts X and XI). The trial court ordered a presentence investigation (PSI) report. Thereafter, defendant filed a motion for judgment notwithstanding the verdict or for a new trial. The court denied defendant's post-trial motion.

¶ 11    A sentencing hearing was held on January 14, 2021. At the beginning of the sentencing hearing, the trial court stated that it had received and reviewed the PSI report. In the PSI report, defendant indicated that she attended counseling at age 13 and was diagnosed as "schizophrenic," a diagnosis with which she disagreed. Defendant also reported that in 2014, she was diagnosed by a Dr. Gaonkar with bipolar disorder, post-traumatic stress disorder (PTSD), and borderline personality disorder. Defendant further related that she was hospitalized "on occasion" at Mercy Center and that some of the hospitalizations were "involuntary." The investigator requested medical reports from Mercy Center, but none were attached to the PSI report. The PSI report also reflected that defendant was previously convicted of criminal defacement of property (a Class A

misdemeanor), unlawful possession of a controlled substance (a Class 4 felony), and driving under the influence of alcohol (a Class A misdemeanor). A risk assessment completed in December 2020 rated defendant at a "low moderate" risk for recidivism. Neither the State nor defendant had any additions or corrections to the PSI report.

¶ 12    At the hearing, the State presented evidence in aggravation of prior acts of domestic violence by defendant against Janes through the testimony of multiple witnesses. The State also presented evidence of defendant's prior convictions of unlawful possession of a controlled substance and criminal defacement of property and, through the testimony of several police officers, of other criminal acts defendant allegedly committed while out on bond in the present case. In addition, Kelly provided a victim impact statement which was read into the record. Through eyewitness testimony, defendant presented evidence of her ex-husband's acts of domestic violence against her and incidents of Janes's mistreatment of her. Defendant also presented a letter from a friend who was familiar with defendant's history as a victim of abuse. Finally, defendant made a statement in allocution. In her statement, defendant claimed that Janes was controlling and abusive. She also reported that, before the incident that led to her convictions, she had been suffering from a severe manic episode. Although she was taking medication, she was not receiving proper medical treatment. Defendant stated that she was in a cycle of domestic abuse, bipolar psychosis, reactions to PTSD, and drug and alcohol abuse.

¶ 13    In argument, the State asserted that consecutive sentences were mandatory because defendant inflicted "severe bodily harm" to Janes. The State argued that Janes received multiple slash wounds to his chest and arms, some of which were "so deep you could see the tissue in the lower levels of his body." The State further asserted that Janes was given "over 50 sutures" to close the multiple, gaping wounds on his body. The State also noted that because defendant was

convicted of aggravated domestic battery, the truth-in-sentencing law required her to serve 85 percent of her sentence for that conviction. The State asked the court to order defendant's sentences for home invasion and armed violence to also be served at 85 percent on the basis that defendant's conduct resulted in "great bodily harm to a victim."

¶ 14   Regarding the length of defendant's sentences, the State argued that there were four compelling factors in aggravation. First, the State asserted that defendant's conduct caused or threatened serious harm to both Janes and Kelly. Second, the State cited defendant's history of prior criminal activity and referenced allegations of past violence committed by defendant against Janes. Third, the State argued that a significant sentence was needed to deter others. Fourth, the State argued that the evidence established that defendant was convicted of a felony committed while she was released on bail or her own recognizance pending trial for a prior felony and was convicted of such prior felony. Additionally, the State argued that certain non-statutory factors necessitated a lengthy sentence. In this regard, the State contended that defendant had repeatedly lied to the arresting officers regarding the incident. The State argued that no factors in mitigation applied. Although defendant claimed that she suffered from mental illnesses, there was no evidence that the alleged conditions substantially affected her ability to understand the nature of her acts. Noting that the two convictions of home invasion merged, the State recommended a sentence of 25 years' imprisonment for home invasion, 20 years' imprisonment for armed violence, and 5 years' imprisonment for aggravated battery. The State requested that all sentences be served consecutively and at 85 percent.

¶ 15   Defense counsel asked the court to take notice of defendant's "minimal" criminal history. Defense counsel noted that defendant had a conviction of drug possession, for which she served time in the county jail. She successfully completed supervision and counseling for a misdemeanor

DUI as well as a 10-day sentence for defacement of property, which was also a misdemeanor. He further noted that defendant was a college graduate, had been married, and had five children with whom she has a great relationship. Defense counsel asserted that defendant suffered from substance abuse and various mental illnesses, including schizophrenia, bipolar disorder, PTSD, and borderline personality disorder. Defense counsel asserted that, according to the PSI report, defendant was at a low-to-moderate risk for recidivism. In arguing against a finding of "severe great bodily harm," defense counsel asserted that defendant used a box cutter, not a machete or a gun. Defense counsel argued that while Janes sustained "some cuts," he did not lose a limb and the evidence at trial showed that he waited to go to the hospital. Defense counsel asked the court to find in mitigation that defendant (1) neither caused nor threatened physical harm to another, (2) did not contemplate her conduct would cause or threaten serious physical harm to another, (3) had a minimal criminal history, (4) suffered from serious mental illness, and (5) was the victim of domestic violence at the hands of her ex-husband and Janes. Defense counsel argued for the minimum permissible sentence and asserted that consecutive sentences were not mandatory.

¶ 16    In pronouncing sentence, the court stated that it had considered the PSI report and the financial impact of incarceration. The court also considered the evidence and information offered by the State and the defense in aggravation and mitigation, the sentencing alternatives, defendant's statement in allocution, and the victim impact statement. In aggravation, the court found defendant's conduct caused or threatened harm, defendant had a history of prior criminal activity, the sentence imposed was necessary to deter others from committing the same crime, and defendant committed the instant offense while out on bail pending trial for a prior felony (unlawful possession of a controlled substance) for which she was subsequently convicted. With respect to the factors in mitigation, the court stated, "I don't believe that any of those factors apply in this

situation." The court found that defendant inflicted "severe bodily injury" and that her conduct resulted in "great bodily harm to a victim." The court noted that although the jury found defendant guilty of two counts of home invasion (counts III and IV), she could only be sentenced on one count. Accordingly, the court merged count IV into count III for purposes of sentencing. The court sentenced defendant to 20 years' imprisonment for home invasion, 18 years' imprisonment for armed violence, and 5 years' imprisonment for aggravated domestic battery. Based on its findings, the court ordered all three sentences to be served consecutively, for an aggregate sentence of 43 years' imprisonment. Additionally, the court found that truth-in-sentencing applied so that defendant would serve 85% of her sentence.

¶ 17    Defendant filed a "Motion to Reduce Sentence." In the motion, defendant raised three principal issues: (1) the trial court improperly applied the "One Act, One Crime sentencing format" to the home-invasion and armed-violence charges; (2) the trial court "improperly sentenced [her] on the basis of a double sentence;" and (3) the trial court improperly "impos[ed] consecutive sentences to the counts and charges of Armed Violence, Home Invasion and Aggravated Battery." In addition, defendant requested resentencing "under the post July 1 2019 assessments." At the hearing on the motion, defense counsel raised the issues set forth in the post-sentencing motion, concluding his argument by stating, "[w]e're asking that the 43-year sentence was excessive, given the circumstances." The trial court denied the post-sentencing motion. Defendant appealed.

¶ 18    In her direct appeal, defendant raised four contentions of error. First, defendant argued that the trial court erred in imposing consecutive sentences on the basis that she inflicted severe bodily injury to Janes. Second, defendant contended that the trial court erred in ordering her to serve 85% of her sentence under the truth-in-sentencing law because Janes's injuries did not merit a finding of great bodily harm to a victim. Third, defendant maintained that the trial court deprived her of a

fair sentencing hearing because it refused to give weight to the mitigating factors of her mental illness or domestic abuse. Fourth, defendant asserted that her 43-year aggregate sentence was excessive when the minimum aggregate sentence of 19 years' imprisonment would provide adequate retribution and result in her release at an age at which she would be restored to useful citizenship and still be unlikely to reoffend. We rejected defendant's arguments, concluding that the trial court's finding that the wounds inflicted upon Janes by defendant constituted "severe bodily injury," thereby triggering the requirement of consecutive sentences, was not against the manifest weight of the evidence. *Varriale-Yelm*, 2023 IL App (2d) 210095-U, ¶¶ 47-61. We further held that the remainder of defendant's arguments were forfeited because they were not raised in her post-sentencing motion and that the issues were not cognizable as plain error or ineffective assistance of counsel. *Varriale-Yelm*, 2023 IL App (2d) 210095-U, ¶¶ 62-102.

¶ 19    On November 13, 2023, defendant filed a *pro se* petition for relief pursuant to the Act. In her petition, defendant argued that: (1) trial counsel was ineffective for failing to present in mitigation at sentencing medical records or testimony to establish that, at the time of the offenses, she was suffering from mental illness that substantially affected her ability to understand the nature of her acts or to conform her conduct to the requirements of the law; (2) trial counsel was ineffective for failing to present in mitigation at sentencing police reports showing that defendant had been the victim of domestic violence and that the effects of domestic violence tended to excuse or justify her criminal conduct; (3) trial counsel was ineffective at sentencing for failing to object to the admission of Kelly's victim impact statement and for failing to call medical personnel at sentencing regarding the nature of Janes's injuries; (4) appellate counsel was ineffective for failing to challenge the charging instrument as it pertained to the armed violence conviction; (5) appellate counsel was ineffective for not contesting trial counsel's failure to object to the charging

instrument, challenge the length of the blade of the weapon used in the offenses, call certain witnesses, or adequately cross-examine Janes; and (6) the sentence she received was excessive, thereby violating both the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §§ 2, 11) and the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) in that the sentences were improperly "influenced by the multiple home invasion counts, as well as charges from which she was acquitted." Within her proportionate-penalties-clause claim, defendant specifically brought an as-applied challenge to the mandatory consecutive sentences. Attached to the petition were various documents, including mental health records for defendant from 2014 through 2017. Among other things, defendant's mental health records show that at a visit to Conventions Psychiatry and Counseling in September 2017, 2½ months prior to the offenses of which she was convicted, defendant was diagnosed with "[b]ipolar disorder, current episode manic." At that time, defendant's insight and judgment were both assessed as "fair to impaired," her affect was assessed as "labile, anxious and congruent," her speech was assessed as "quick, pressured, and loud," and defendant indicated that "she feels like she is going to snap." At a follow-up visit with Dr. Sandeep Gaonkar a month later, defendant stated that she had "physically attacked her mother of fiancé [*sic*]." At the same visit, defendant reported that "she is not doing well[,] *** recognized she is manic," and indicated that she "wants to calm down."

¶ 20    The trial court dismissed defendant's post-conviction petition in an order dated January 16, 2024. The court determined that defendant's claims of ineffective assistance of counsel were either patently without merit or barred by *res judicata* as they were previously addressed in defendant's direct appeal. Defendant sent a signed *pro se* notice of appeal to the circuit court clerk that was placed in the prison mail system on February 8, 2024. The circuit court filed the notice of appeal

on February 20, 2024, and appointed the Office of the State Appellate Defender to represent defendant on February 28, 2024.

¶ 21                              II. ANALYSIS

¶ 22     On appeal, defendant argues that the trial court erred in summarily dismissing her postconviction petition at the first stage of the postconviction process. In support, defendant raises two issues. First, she argues that her postconviction petition stated the gist of a claim that trial counsel rendered ineffective assistance by failing to adequately investigate and present evidence of her mental health as mitigation at the sentencing hearing. Second, she contends that the petition raised an arguable claim that the trial court erroneously imposed consecutive sentences such that her sentence violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) as applied to her in that the trial court erroneously imposed consecutive sentences on the convictions of home invasion and armed violence without a finding that she inflicted severe bodily injury to Kelly.

¶ 23     The Act provides a method by which a criminal defendant may file a petition challenging his or her conviction or sentence based on a substantial violation of constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2022); *People v. Edwards*, 2012 IL 111711, ¶ 21. Proceedings under the Act are collateral to proceedings on direct appeal and focus on constitutional claims that have not and could not have been previously adjudicated. *People v. Buffer*, 2019 IL 122327, ¶ 12. For that reason, the doctrine of *res judicata* bars issues that were raised and decided on direct appeal, and forfeiture precludes issues that could have been raised but were not. *People v. Dorsey*, 2021 IL 123010, ¶ 31. The procedural bars of *res judicata* and forfeiture are relaxed, however, where fundamental fairness so requires, where the alleged forfeiture is due to ineffective assistance of

appellate counsel, or where the facts relating to the issue do not appear on the face of the original appellate record. *People v. English*, 2013 IL 112890, ¶ 22.

¶ 24    A postconviction proceeding consists of three stages. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). In this case, defendant's petition for postconviction relief was summarily dismissed at the first stage. During this initial phase, the trial court reviews the petition independently, without input from the State. *People v. Brown*, 236 Ill. 2d 175, 184 (2010); *Hodges*, 234 Ill. 2d at 10. The defendant need only present the "gist" of a constitutional claim. *Hodges*, 234 Ill. 2d at 9. Since most petitions at this stage are drafted by *pro se* defendants, the threshold for survival is low. *Hodges*, 234 Ill. 2d at 9. Taking the allegations in the petition as true to the extent they are not contradicted by the record, the court considers whether the petition is "frivolous or patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016); *People v. Coleman*, 183 Ill. 2d 366, 382 (1998). A petition is "frivolous and patently without merit only if the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 11-12. A claim has no arguable basis when it is grounded in an indisputably meritless legal theory, such as one completely contradicted by the record, or a fanciful factual allegation, such as those that are fantastic or delusional. *Brown*, 236 Ill. 2d at 185. If the court concludes that the petition is frivolous and patently without merit, it must dismiss the petition. *People v. Smith*, 2023 IL App (1st) 221496, ¶ 33. Conversely, a petition that is not dismissed as frivolous or patently without merit advances to the second stage, where a *pro se* petitioner can obtain appointed counsel and the State can move to dismiss the petition. 725 ILCS 5/122-2.1(b), 122-4 through 122-6 (West 2022); *People v. Bell*, 2024 IL App (2d) 230079, ¶ 18. Our review of a first-stage dismissal is *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 25    A claim that a defendant was denied his or her constitutional right to effective assistance of counsel is "governed by the familiar two-pronged test established in *Strickland v. Washington*,

466 U.S. 668 (1984)." *People v. Brown*, 2017 IL 121681, ¶ 25. Generally, *Strickland* requires a defendant to establish that counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced by counsel's deficient performance. *Brown*, 2017 IL 121681, ¶ 25. However, when a trial court applies the *Strickland* standard to a postconviction petition at the first-stage of review, it must use a "more lenient" form of the standard. *People v. Tate*, 2012 IL 112214, ¶¶ 18-19. " '[A] petition alleging ineffective assistance may not be *** dismissed [at the first stage] if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced.' " (Emphases in original.) *Tate*, 2012 IL 112214, ¶ 19 (quoting *Hodges*, 234 Ill. 2d at 17). With these principles in mind, we address defendant's assignments of error.

¶ 26    Defendant initially argues that the first-stage dismissal of her postconviction petition was in error because the petition set forth the gist of a new claim that trial counsel provided ineffective assistance with respect to the investigation and presentation of mitigating mental health evidence at sentencing. Defendant notes that, in dismissing her petition at the first stage, the trial court determined that this claim was raised on direct appeal and therefore barred by the doctrine of *res judicata*. Defendant contends that the trial court's determination was "inaccurate." According to defendant, on direct appeal, she argued that the trial court abused its discretion by failing to consider her mental health as a mitigating factor at sentencing. Thus, the scope of the ineffective-assistance-of-counsel claim this court considered on direct appeal related to the trial court's findings regarding her mental health status as a mitigating factor at sentencing. In contrast, defendant argues that the issue raised in her postconviction petition is that trial counsel failed to investigate and present mitigating evidence in the form of proof that her mental health affected her ability to comprehend her actions or to conform her conduct under the law and therefore provided

ineffective assistance of counsel at sentencing. Defendant maintains that this issue was not considered on direct appeal. Defendant further asserts that she attached medical records to her petition indicating that she was suffering from acute symptoms of bipolar disorder in the months and weeks immediately prior to her arrest. As such, defendant requests that this court remand this case for second stage postconviction proceedings.

¶ 27    The State responds that the trial court did not err in rejecting her postconviction claim that trial counsel was ineffective for failing to adequately investigate and present evidence of her mental health status in mitigation at sentencing. The State's argument is twofold. Initially, the State asserts that the trial court correctly determined that defendant's claim was barred by *res judicata* because it was raised and addressed on direct appeal. Alternatively, the State contends that trial counsel was not arguably ineffective because there was adequate investigation and evidence presented of defendant's mental health at her sentencing hearing. The State therefore concludes that defendant failed to establish the "gist" of a claim in her postconviction petition.

¶ 28    We first address whether the trial court erred in determining that this claim was barred by *res judicata*. Among the issues defendant raised on direct appeal was whether the trial court abused its discretion by failing to consider relevant mitigation evidence in sentencing her, including that she was suffering from a serious mental illness (see 730 ILCS 5/5-5-3.1(a)(16) (West 2016)). *Yelm*, 2023 IL App (2d) 210095-U, ¶ 73. We initially determined that defendant forfeited this issue because she failed to raise it in her post-sentencing motion. *Yelm*, 2023 IL App (2d) 210095-U, ¶ 75.

¶ 29    Next, we reviewed the issue for plain error, but determined that defendant failed to meet her burden of showing that the trial court committed clear or obvious error when it determined that the serious-mental-illness mitigating factor (730 ILCS 5/5-5-3.1(a)(16) (West 2016)) did not apply

to her case. *Yelm*, 2023 IL App (2d) 210095-U, ¶¶ 76-86. For that mitigating factor to apply, there must have been evidence in the record that, at the time of the offense, defendant was suffering from a serious mental illness which substantially affected her ability to understand the nature of her acts or to conform her conduct to the requirements of the law. 730 ILCS 5/5-5-3.1(a)(16) (West 2016); *Yelm*, 2023 IL App (2d) 210095-U, ¶ 81. We concluded that the evidence presented at the sentencing hearing regarding whether defendant suffered from a serious mental illness was "scant," consisting principally of statements defendant made to others that she suffered from various mental illnesses without the support of any medical records or other independent corroboration. *Yelm*, 2023 IL App (2d) 210095-U, ¶ 82. We further concluded that defendant failed to point to any evidence presented at the sentencing hearing to establish that, at the time of the offenses, any alleged mental illness substantially affected her ability to understand the nature of her acts or to conform her conduct to the requirements of the law. *Yelm*, 2023 IL App (2d) 210095-U, ¶ 83. To the contrary, we noted that shortly after the incident, during an interview with the police, defendant fabricated details about the incident, thereby suggesting that she was aware of what she was doing and knew that her conduct was unlawful. *Yelm*, 2023 IL App (2d) 210095-U, ¶ 83.

¶ 30     Finally, we concluded that because the trial court did not abuse its discretion in finding that the statutory mitigating factors cited by defendant are inapplicable to her case, a reasonable probability did not exist that the result of the proceeding would have been different if trial counsel had raised the issue in a post-sentencing motion. *Yelm*, 2023 IL App (2d) 210095-U, ¶ 87. As such, we concluded that any claim of ineffective assistance of trial counsel would fail. *Yelm*, 2023 IL App (2d) 210095-U, ¶ 87.

¶ 31    Considering this backdrop, we agree with defendant that the trial court's determination that the claim she raised in her postconviction petition was raised on direct appeal, and therefore barred by the doctrine of *res judicata*, was error. On direct appeal, we considered whether the *trial court* erred in failing to consider the statutory mitigating factor that she was suffering from a serious mental illness at the time of the commission of the offenses. *Yelm*, 2023 IL App (2d) 210095-U, ¶ 73. In conjunction with this issue, we did observe that the evidence suggested that defendant was aware of what she was doing and that she did not point to any evidence presented at the sentencing hearing that the mental illnesses with which she was allegedly diagnosed "substantially affected" her ability to conform her conduct to the requirements of the law or to understand the nature of her acts. *Yelm*, 2023 IL App (2d) 210095-U, ¶ 83. However, that conclusion was based on the record before us on direct appeal.

¶ 32    In contrast, the issue defendant purports to raise in this postconviction petition is that *trial counsel failed to investigate and present* mitigating evidence in the form of proof that her mental health affected her ability to comprehend her actions or to conform her conduct under the law, therefore resulting in ineffective assistance of counsel at sentencing. In support, defendant attached mental health records that were not included in the record on direct appeal. Consequently, we conclude that the issue we addressed on direct appeal regarding the serious-mental-illness mitigating factor is distinct from the issue defendant raises in her postconviction petition. Hence, defendant's claim is not barred by *res judicata* as it was not raised and decided on direct appeal. Indeed, defendant could not have raised this issue on direct appeal because it is based on matters outside the record, *i.e.*, the mental health records defendant attached to her petition. See *English*, 2013 IL 112890, ¶ 22 (noting that the procedural bars of *res judicata* and forfeiture are relaxed where the facts relating to the issue do not appear on the face of the original appellate record);

*People v. Brown*, 2014 IL App (1st) 122549, ¶ 41 ("A postconviction claim that depends on matters outside the record *** is not ordinarily forfeited because such matters may not be raised on direct appeal").

¶ 33    We now turn to whether defendant's postconviction petition stated the gist of a claim that trial counsel rendered ineffective assistance by failing to adequately investigate and present evidence of her mental health as mitigation at the sentencing hearing. We conclude that defendant made an arguable showing of deficient performance and prejudice. Regarding deficient performance, at the time of defendant's sentencing hearing, defense counsel had evidence by way of the PSI report that defendant reported a history of mental illness. Defense counsel also had before him the unusual facts of this case. Defendant, dressed in a Wonder Woman costume, broke into the condominium of her ex-boyfriend's girlfriend in the middle of the night. Armed with a metal pipe and a box cutter, defendant then proceeded to attack both her ex-boyfriend and his girlfriend. Given defendant's history of mental illness and the odd facts of the case, counsel arguably should have further investigated defendant's mental health, including whether defendant's mental status affected her ability to comprehend her actions or to conform her conduct to the law, and further presented his or her findings to the court during the sentencing hearing. There is no evidence that trial counsel did so. Further, defendant arguably suffered prejudice given the statutory mitigating factor of serious mental illness (730 ILCS 5/5-5-3.1(a)(16) (West 2016)) and the trial court's finding at the sentencing hearing that no evidence in mitigation applied. Under these circumstances, we conclude that defendant's contention merits further development, and her *pro se* petition should not have been dismissed at the first stage for failure to state the gist of a constitutional claim.

¶ 34    The State makes several arguments why it believes the trial court properly dismissed defendant's petition. We do not find any of them persuasive. First, the State suggests that trial counsel's decision not to present additional mental health records did not fall below an objective standard of reasonableness because such a decision constitutes a matter of trial strategy. However, as our supreme court has stated, trial strategy is not an appropriate consideration at the first stage of the postconviction process. *Tate*, 2012 IL 112214, ¶ 22 ("The State's [trial] strategy argument is inappropriate for the first stage, where the test is whether it is arguable that counsel's performance fell below an objective standard of reasonableness and whether it is arguable that the defendant was prejudiced."). The State also argues that information about defendant's mental health was included in the PSI report and defendant's statement of allocution at sentencing. While true, the State does not point to, and our review of the record does not reveal, any mental health records that were presented at trial or sentencing regarding whether defendant's mental-health status substantially affected her ability to understand the nature of her acts or to conform her conduct to the requirement of the law. Finally, the State suggests that the court gave weight to defendant's mitigating evidence because it sentenced here to less than the maximum sentence available. However, the trial court expressly stated at the sentencing hearing that it did not "believe" that any of the mitigating factors applied.

¶ 35    Accordingly, we find that defendant's petition meets the low first-stage threshold as it presents an arguable claim of ineffective assistance of counsel. We take no position on whether an actual constitutional violation occurred as a defendant need only present the gist of a claim at the first stage. Moreover, we need not address the other assignment of error defendant raises on appeal as her first claim warrants further proceedings and partial dismissals are not permitted at the first stage of the postconviction process. *People v. Rivera*, 198 Ill. 2d 364, 274 (2001).

¶ 36                                    III. CONCLUSION

¶ 37     For the reasons set forth above, we reverse the trial court's first-stage dismissal of defendant's postconviction petition and remand for further proceedings consistent with the Act and this order.

¶ 38     Reversed and remanded.