2025 IL App (1st) 232024-U

FIFTH DIVISION
February 21, 2025

No. 1-23-2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 14012 |
| | ) | |
| DESMOND YOUNG, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Mitchell and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The summary dismissal of defendant's postconviction petition is affirmed where defendant did not present the gist of a constitutional claim that he received ineffective assistance of appellate counsel based on appellate counsel's failure to raise an excessive sentence claim on appeal.

¶ 2    After a jury trial, defendant Desmond Young was convicted of first degree murder and armed robbery, and sentenced to a total of 96 years in prison. He now appeals from the summary dismissal of his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020), arguing that he raised the gist of a constitutional claim that his

appellate counsel was ineffective for failing to raise an excessive sentence claim on direct appeal. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4     Mr. Young was charged with the first degree murder and armed robbery of Olufemi Abdulai, which occurred on January 6, 2012, when Mr. Young was 19 years old. During the week-long trial held in April and May 2018, the jury heard from close to 30 witnesses and was presented with over 150 exhibits. Because Mr. Young challenges his sentence and not his conviction, we only briefly summarize the trial evidence. A fuller recitation of the trial facts is available in our decision on direct appeal. *People v. Young*, 2021 IL App (1st) 181962-U.

¶ 5                                A. The Trial

¶ 6     The evidence at Mr. Young's trial showed that Mr. Abdulai was robbed and fatally shot on January 6, 2012. Police did not recover a firearm from the crime scene but arrested Mr. Young when he was observed several hours later, discarding a revolver while attempting to flee.

¶ 7     The State called several witnesses, including Laura Perkins, who was dating Mr. Young and pregnant with his child at the time of the shooting and accompanied him throughout that day. She testified that at around 12:25 p.m. Mr. Young was driving with her in the front passenger seat when he turned down an alley and parked in an empty lot. He exited the vehicle and went down a gangway leading to Monroe Street. Ms. Perkins lost sight of Mr. Young and did not know where he was going. Approximately 30 seconds later, she heard several gunshots. Mr. Young ran back into the vehicle carrying a black revolver. After driving away and initially refusing to tell her what happened, Mr. Young told Ms. Perkins, "I think I killed someone. I think I shot that dude."

¶ 8     According to Ms. Perkins, she, Mr. Young, and an individual named "Bratt" returned to the crime scene later that day, where Mr. Young pointed out, "[t]his is what I be on," and "[t]his

is my work." After dropping off Bratt, Ms. Perkins drove Mr. Young to her apartment. Mr. Young stood beside the parked car "rolling a blunt," when he was approached by two officers in an unmarked vehicle. Mr. Young ran through an alleyway where officers apprehended and arrested him.

¶ 9   Ms. Perkins's testimony was corroborated by the testimony of several police officers. The arresting officers testified that they were aware of a murder nearby but were not actively looking for a suspect or aware that Mr. Young was connected when they approached him. Mr. Young was seen throwing a gun over a nearby wrought-iron gate while fleeing and had $80 in loose cash when he was apprehended. A gunshot residue expert subsequently testified that the jeans Mr. Young was wearing that day showed evidence of being near a discharged firearm.

¶ 10   Tiesha Crayton, a friend of Mr. Young, also testified. Ms. Crayton explained that she saw a man dressed like Mr. Young shoot Mr. Abdulai after a brief altercation. A clip from a telephone call between Ms. Crayton and Mr. Young, who was in jail for this murder, was played for the jury. In the recording, Mr. Young and Ms. Crayton debated how many people had seen Mr. Young and who else "kn[e]w about it."

¶ 11   Although four of the State's witnesses recanted at trial, the State relied on their prior statements, which corroborated its other evidence.

¶ 12   The jury found Mr. Young guilty of first degree murder and armed robbery, with the additional finding that he personally discharged the firearm that was the proximate cause of Mr. Abdulai's death.

¶ 13                    B. Presentence Investigation and Sentencing

¶ 14   Mr. Young's presentence investigation report revealed that he had one adjudication of delinquency in 2007 and three adult felonies in 2010, all for drug offenses. He also had a charge

of unlawful use of a weapon pending at the time of his sentencing.

¶ 15    Mr. Young described his childhood as "alright" and reported having a good relationship with his parents and siblings. He was expelled from school in tenth grade for behavioral problems but reported having positive relationships with his teachers and above-average grades. At the time of his arrest, he was unemployed and living with his grandmother, who helped raise him, and his two siblings.

¶ 16    At the sentencing hearing, Mr. Young's younger brothers, Darius Young and Sherrod Carter, testified that Mr. Young was a positive influence in their lives. According to Mr. Carter, Mr. Young introduced him to basketball and made sure he went to school every day. He explained that he was "like a second father." Mr. Young's grandmother, Jacquelyn Giles, testified that she regularly took Mr. Young to church when he was growing up and he often helped his mother with his siblings. According to Ms. Giles, Mr. Young never had any problems with anyone and "was not a murderer."

¶ 17    Mosunmola Abdulai, Mr. Abdulai's wife, also testified at the sentencing hearing. She explained that the sudden death of her husband left her and her children struggling emotionally and financially and deprived the community of a well-respected and charitable figure.

¶ 18    The State argued that Mr. Young deserved a sentence above the 76-year minimum for first degree murder, armed robbery, and the firearm enhancement. It pointed to the fact that Mr. Abdulai was shot five times for no apparent reason, was unarmed, and did not hit or provoke Mr. Young. The State also noted that Mr. Young had three prior drug felonies.

¶ 19    In mitigation, counsel for Mr. Young argued that the gun went off during a struggle. Counsel countered the State's argument that he had three felony drug convictions by pointing out that they were nonviolent and he had none since 2010. Counsel also argued that he was taking

steps to improve his life such as learning to write and produce music while in jail. He asked that the sentences run concurrently so that the court could sentence him to a total of forty-five years.

¶ 20    Mr. Young requested leniency during his allocution, stating he had learned his lesson from incarceration and hoped to pursue music and a better life.

¶ 21    The trial court first considered each of the statutory factors for mitigation (730 ILCS 5/5-5-3.1 (West 2022)), which related to Mr. Young's background, character, and the nature of the crime he committed. The court noted that it was considering the positive testimony regarding Mr. Young's character and recent psychological evidence showing that young people's brains are not always fully formed until their early twenties. It noted that: "character and attitude of the defendant indicates that he's unlikely to commit another crime." However, it ultimately found these factors largely inapplicable concluding that "mitigation in this case is minimum." More specifically, the court noted that "[w]hen one contemplates committing an armed robbery with a gun, the odds are great that some serious physical harm could happen" and that "armed robbery" is "a whisper away from murder." In addition to the severity of both crimes, Mr. Young could never compensate the victim's family for their loss and the offense was committed shortly after his release from prison for prior convictions. The court also noted that Mr. Young was unable to produce certificates of completion for any sort of rehabilitative or music-related program to prove that he was putting his time to good use while incarcerated.

¶ 22    The court then observed that some of the aggravating factors (730 ILCS 5/5-5-3.2 (West 2022)) were part of the crimes for which Mr. Young was found guilty, such as the fact that he caused harm to the victim and received compensation for committing the offenses. The court also noted that Mr. Abdulai was a "[h]ard-working citizen of the City of Chicago" and Mr. Young "stole his property at gunpoint and then shot him five times, killing him." The court also said that

Mr. Young had "a history of prior delinquency or criminal activity" and that the "sentence [wa]s necessary to deter others from committing the same crime."

¶ 23   Ultimately, the trial court found that Mr. Young was not entitled to the minimum sentence for the murder "[b]ased on [his] prior criminal background." It sentenced Mr. Young to a prison term of 40 years for the first degree murder, plus the 25-year enhancement, and to 31 years for the armed robbery, to run consecutively, for a total sentence of 96 years.

¶ 24   Mr. Young filed a motion to reconsider, arguing that the sentence failed to reflect his potential for rehabilitation, his role in his siblings' lives, and his lack of violent history. He claimed the 96-year sentence was effectively a life sentence and violated his constitutional rights. The court denied the motion, stating the sentence was "fair and appropriate."

¶ 25                                    C. Direct Appeal

¶ 26   On March 31, 2021, this court affirmed Mr. Young's convictions finding that (1) the prosecutor erred by arguing the substance of an anonymous call implicating Mr. Young because it was admitted for the limited purpose of explaining the course of the officers' investigation, but reversal was not required; (2) the trial court did not abuse its discretion in admitting testimony that a pair of jeans Mr. Young allegedly wore during this crime tested positive for gunshot residue; (3) the trial court's Rule 431(b) admonishments were improper, but reversal was not required under the plain error doctrine; and (4) the trial court abused its discretion in admitting a witness's prior inconsistent statements, but the error was harmless because it was cumulative of his grand jury testimony. *Young*, 2021 IL App (1st) 181962-U, ¶¶ 67-109.

¶ 27                           D. Postconviction Proceedings

¶ 28   On October 17, 2022, Mr. Young filed a *pro se* postconviction petition claiming that (1) his 96-year sentence was unconstitutional as applied to him under the proportionate penalties clause

of the Illinois constitution because it did not consider his age and greater rehabilitative potential; (2) his trial counsel was ineffective for failing to raise a proportionate penalties challenge to his sentence and for failing to present evidence to support that challenge; and (3) appellate counsel was ineffective for failing to raise a proportionate penalties challenge to his sentence and "for not arguing [Mr. Young's] 96-year sentence was excessive."

¶ 29 The circuit court dismissed Mr. Young's petition as frivolous and without merit in a written order on December 2, 2022. The court reasoned that Mr. Young's proportionate penalties argument was barred by *res judicata* because he raised it on two previous occasions: his status as a young adult "was explicitly considered at sentencing and at the motion to reconsider sentence hearing." Similarly, the court found that Mr. Young's ineffective assistance of trial counsel claim lacked merit because trial counsel argued that Mr. Young had rehabilitative potential at the sentencing hearing "and then explicitly raised a challenge to the sentence pursuant to the proportionate penalties clause based on a failure to consider his rehabilitative potential, youthfulness, and the fact that this is a *de facto* life sentence." According to the court, "trial [counsel] cannot be ineffective for failing to argue a point they did argue." Finally, the court found that Mr. Young could not show he was prejudiced by appellate counsel's failure to raise a proportionate penalties argument because this argument was meritless, so "such an appellate issue would not arguably have been reasonably probable to succeed."

¶ 30                                    II. JURISDICTION

¶ 31 The circuit court dismissed Mr. Young's petition on December 2, 2022. Upon receipt of a supervisory order from our supreme court directing us to do so, we allowed Mr. Young leave to file a late notice of appeal on November 9, 2023. We thus have jurisdiction over this appeal pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and

7

Illinois Supreme Court Rule 606 (eff. July 1, 2017) and Rule 651(a) (eff. July 1, 2017), governing appeals from final judgments in postconviction proceedings.

¶ 32                                     III. ANALYSIS

¶ 33    On appeal, Mr. Young argues that the circuit court erred in summarily dismissing his petition because he raised the gist of a constitutional claim that his appellate counsel was ineffective for failing to raise an excessive sentence claim on direct appeal. The State responds that Mr. Young's claim is too conclusory and fails to state even the gist of a claim that his counsel performed deficiently or that he was prejudiced by any alleged deficiency.

¶ 34    The Act establishes procedures by which a criminal defendant may challenge his conviction or sentence based on a substantial deprivation of his state or federal constitutional rights. 725 ILCS 5/122–1(a)(1) (West 2022); *People v. Caballero*, 228 Ill. 2d 79, 83 (2008). Proceedings under the Act consist of three stages of review. *People v. Johnson*, 2018 IL 122227, ¶ 14. At the first stage, which is the stage at issue here, a defendant's petition need only state the "gist" of a valid constitutional claim. *People v. Bailey*, 2017 IL 121450, ¶ 18. To state the gist of a claim, a defendant must allege sufficient facts to arguably raise a constitutional violation. *People v. Brown*, 236 Ill. 2d 175, 184 (2010).  The circuit court may only dismiss a petition at this stage if it is "frivolous or patently without merit," meaning the petitioner's claims have "no arguable basis either in law or in fact." *People v. Boykins*, 2017 IL 121365, ¶ 9. Additionally, when a postconviction petitioner is acting *pro se*, as is the case here, we are to analyze their claims liberally, "with a lenient eye, allowing borderline cases to proceed." (Internal quotation marks omitted.) *People v. Hodges*, 234 Ill. 2d 1, 21 (2009). We review a summary dismissal of a postconviction petition *de novo* and can affirm on any basis supported by the record. *People v. Allen*, 2015 IL 113135, ¶ 19.

¶ 35    Here, Mr. Young is alleging ineffective assistance of appellate counsel. To prevail on such a claim, a defendant must satisfy both prongs of the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984). "Under that standard, a defendant must show both that the appellate counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful." *People v. English*, 2013 IL 112890, ¶ 33. At this stage of postconviction proceedings, however, Mr. Young only needed to show that (1) appellate counsel's performance was *arguably* deficient and (2) the underlying claim was *arguably* meritorious. *Hodges*, 234 Ill. 2d at 17. In our view, his claim does not satisfy this burden.

¶ 36    First, Mr. Young cannot demonstrate that his appellate counsel was arguably deficient because the decision of what claims to raise on appeal is a strategic choice. The constitutional right to effective assistance of counsel guarantees a criminal defendant "reasonable, not flawless, representation," and errors in strategy or judgment alone do not make the representation incompetent. *People v. Fuller*, 205 Ill. 2d 308, 331 (2002). As our supreme court explained in *People v. Simms*, 192 Ill. 2d 348, 362 (2000), "[a]ppellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." Here, Mr. Young's appellate counsel raised a number of issues on direct appeal, including three that this court agreed reflected errors at trial, although we also found that they did not warrant reversal. It is clear that appellate counsel argued vigorously on behalf of Mr. Young. Even under the generous standard of first-stage postconviction proceedings, Mr. Young cannot show that his appellate counsel's decision not to raise an excessive sentence argument on direct appeal was anything other than a strategic choice.

¶ 37    Additionally, a challenge to Mr. Young's sentence would not have been likely to succeed on appeal. This both confirms that counsel did not act unreasonably in not bringing it and means that Mr. Young's claim cannot meet the second prong of *Strickland.*

¶ 38    Sentencing involves a careful evaluation of various factors (*People v. Williams*, 2017 IL App (1st) 150795, ¶ 44) and balancing the seriousness of the offense with the defendant's rehabilitative potential (*People v. Knox*, 2014 IL App (1st) 120349, ¶ 46). A trial court also has wide discretion in sentencing, and "its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). "A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *Id.* at 212-13. Reviewing courts assume the trial court considered all relevant evidence unless there is clear indication to the contrary (*People v. Thompson*, 222 Ill. 2d 1, 45 (2006)) and a sentence within the permitted statutory range is presumed proper (*Knox*, 2014 IL App (1st) 120349, ¶ 46). To succeed on an excessive sentence claim, a defendant must show that the trial court abused its discretion, which occurs when a sentence "is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *Alexander*, 239 Ill. 2d at 212.

¶ 39    The court exercised its discretion in imposing a sentence on Mr. Young within the statutory range, which spanned from 76 years to natural life. Mr. Young's first-degree murder charge carried a sentence between 20 and 60 years while his armed robbery charge carried a sentence between 6 and 30 years, which had to be served consecutively because one of the offenses was first degree murder. 730 ILCS 5/5-4.5-20(a); 730 ILCS 5/5-4.5-25(a); 730 ILCS 5/5-8-4(d) (2012). Each

charge was also subject to a minimum 25-year enhancement because Mr. Young was found to have personally discharged a firearm proximately causing death, bringing his minimum prison sentence to 76 years. 730 ILCS 5/5-8-1(a)(1)(d)(iii); 720 ILCS 5/18-2(b). For armed robbery, Mr. Young received the minimum sentence of 6 years plus the 25-year enhancement and 40 years for first degree murder, plus the 25-year enhancement, bringing his total sentence to 96 years.

¶ 40    The crux of the argument that Mr. Young claims his appellate counsel should have made is that his 96-year sentence equates with a sentence of natural life since it is unlikely to be survivable. Mr. Young argues that this is excessive in light of factors like his age, lack of a violent criminal background, and rehabilitative potential. Mr. Young argues that this evidence and the court's own acknowledgement that he was unlikely to commit another crime show that it clearly believed he was not "utterly irredeemable" and the only way to manifest this finding would be to sentence him to a survivable prison term. But, the reality is that even a minimum sentence of 76 years would almost certainly be a life sentence. In addition, our criminal code would appear to allow the court to impose a sentence of natural life since the victim was killed in the course of another felony and the court found that Mr. Young actually caused his death. 730 ILCS 5/5-8-1(a)(1)(b-5)(4)(a)(i).

¶ 41    The result of this sentencing scheme is that the court could not avoid giving Mr. Young a term that was, in fact a life sentence. This was the legislative framework the court had to maneuver within. Within that harsh statutory framework, the court had minimal discretion to exercise. In rejecting a natural life sentence, the court explicitly recognized that there were mitigating facts, mentioning specifically that Mr. Young had a positive character that reflected an unlikeliness that he would commit another crime. We simply cannot conclude that the sentences it imposed were an abuse of discretion.

11

¶ 42    Here, the record shows that the court thoroughly considered all relevant factors in sentencing Mr. Young. The court highlighted the testimony of Mr. Young's family about his positive character and attitude and the unlikeliness that he would commit another crime. The court also noted Mr. Young's age at the time of the crime and recent psychological evidence that young people's brains are not fully developed until their early twenties. It noted that Mr. Young committed this crime after being released from prison and that he failed to produce evidence such as program completion certificates of his rehabilitation in jail since he began serving his sentence. The court also noted several factors in aggravation, including the seriousness of the offense, the loss to the victim's family, and Mr. Young's prior criminal activity.

¶ 43    Mr. Young insists this case is analogous to *People v. Smith*, 2023 IL App (1st) 221496. There, this court reversed the dismissal of a postconviction petition at the first stage, finding the defendant presented the gist of a constitutional claim of ineffective assistance of appellate counsel for failing to make an excessive sentence argument on direct appeal. *Id.* ¶ 40. In that case, the defendant could point to his work history, community service, and role in helping to care for his father, none of which is true here. *Id*. ¶ 37. More importantly, the crimes in that case were Class X felonies with a range of 6 to 30 years (*Id.* ¶ 38) so even with the enhancements, the court had the option to give the defendant a sentence of under thirty years. *Id.*  Instead of giving Mr. Smith a sentence that he was likely to survive, at "the court's imposition of the maximum sentence was at variance with the mitigating evidence." *Id*. ¶ 38. Here, Mr. Young did not receive the maximum sentence for either of his convictions and even if he had received the minimum on both convictions the sentence would not have been one he was at all likely to survive.

¶ 44    In our view, Mr. Young has failed to present even a gist of a claim that his appellate counsel was deficient for failing to raise an excessive sentence argument or that there is a reasonable

12

probability that had counsel raised this issue, it would have been successful and resulted in a shorter sentence.

¶ 45                                    IV. CONCLUSION

¶ 46    For the foregoing reasons, we find that Mr. Young failed to raise the gist of a constitutional claim. Accordingly, we affirm the circuit court's summary dismissal of his postconviction petition.

¶ 47    Affirmed.